IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMBRA TECHNOLOGIES LTD. (UK), <br> UMBRA TECHNOLOGIES LIMITED (CN), <br> and UMBRA TECHNOLOGIES (US) INC., <br> *d/b/a* UMBRA TECHNOLOGIES, <br><br> Plaintiffs, <br><br> v. <br><br> VMWARE, INC., <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | 1:23-CV-904-DII |

**ORDER**

Before the Court is a motion to transfer filed by Defendant VMware, Inc. ("VMware"). (Dkt. 23). Plaintiffs UMBRA Technologies Ltd. (UK), UMBRA Technologies Limited (CN), and UMBRA Technologies (US) Inc. (collectively, "UMBRA") filed a response in opposition, (Dkt. 27), and VMware filed a reply, (Dkt. 31). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

**I. BACKGROUND**

UMBRA filed its complaint on August 2, 2023. (Compl., Dkt. 1). UMBRA alleges that VMware's VMware NSX, VMware SD-WAN, VMware vSphere, and VMware Horizon products infringe four of its patents: U.S. Patent Nos. 10,574,482; 10,630,505; 11,108,595; and 11,146,632. (*Id.*). VMware filed a motion to dismiss on October 13, 2023. (Mot. Dismiss, Dkt. 21). Two weeks later, on October 27, 2023, VMware filed an opposed motion to transfer, arguing that this Court should transfer the case to the Northern District of California (the "NDCA"). (Mot., Dkt. 23). VMware argues that its relevant witnesses and evidence are located in the NDCA, where it is headquartered, as are relevant third parties. (*Id.* at 1). VMware also notes that none of the UMBRA entities has any connection to this district and contends that no relevant witnesses or evidence are

1

located in this district. (*Id.*). Finally, VMware contends that the public interest factors weigh in favor of transfer, because there is a local interest in having VMware's products adjudicated in the place where they are developed: the NDCA. (*Id.* at 12–13).

## II. LEGAL STANDARD

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court turns to consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen AG,* 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative." *In Re: Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). But when the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

### III. DISCUSSION

#### A. Whether the Case Could Have Been Brought in the NDCA

"The preliminary question under 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. In other words, a movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *2 (W.D. Tex. Aug. 26, 2022). VMware has demonstrated that venue and jurisdiction would have been proper in the NDCA. VMware is subject to personal jurisdiction in California because its headquarters is in the NDCA, (Mot., Dkt. 23, at 6), and a substantial portion of the events at issue give rise to venue in the NDCA. Therefore, the preliminary question is satisfied.

#### B.  Private Interest Factors

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of

3

attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The Court will address each in turn.

<u>1. Relative Ease of Access to Proof</u>

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *WAG Acquisition, L.L.C. v. Google LLC*, No. W-21-CV-00816-ADA, 2022 WL 9569437, at *3 (W.D. Tex. Oct. 5, 2022). In "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at 1345).

VMware alleges that because "much of the Accused Technologies were designed and developed in the Palo Alto area, most design and development documents for the Accused Technologies are in the Northern District of California." (Mot., Dkt. 23, at 7).[1] VMware also notes that "UMBRA does not appear to conduct any business activities in Texas, let alone this District" because the three UMBRA entities are located in: (1) the British Virgin Islands (UMBRA Technologies Ltd. (UK)); (2) Hong Kong (UMBRA Technologies Limited (CN)); and (3) Delaware and Rhode Island (UMBRA Technologies (US) Inc.). (*Id.* at 1, 7). VMware also points out that it is more likely to have relevant documents than UMBRA. (Mot., Dkt. 23, at 7–8). Accordingly, VMware asserts that this factor strongly favors transferring this case to the NDCA.

In response, UMBRA argues that VMware has not identified "any specific document types or locations of any hard copy documents held by VMware." (Resp., Dkt. 27, at 4). UMBRA also

---

[1] In its reply, VMware clarifies that "[t]he design and development of two products is centered in California, one is in India, and one is in London." (Reply, Dkt. 31, at 3).

4

argues that VMware has only identified electronic documents that are located on its servers in the NDCA, which it argues could "be transferred electronically." (*Id.* at 4–6). UMBRA also asserts that VMware's allegation that the accused technologies were designed and developed in the NDCA does not support this factor. (*Id.* at 5). UMBRA further argues that VMware may have some relevant documents in its Austin office. (*Id.* at 6). Accordingly, UMBRA contends that this factor is neutral.

The Court agrees with VMware that the ease of access factor strongly favors transferring this case to the NDCA. First, it is the location of the defendant's documents that primarily informs the Court's analysis of this factor. *In re Nintendo*, 589 F.3d at 1199; *In re Apple Inc.*, 979 F.3d at 1340. Because VMware is headquartered in the NDCA and the technologies at issue were mainly designed and developed in the NDCA or abroad, the Court finds that it is likely that more of VMware's relevant documents will be located in the NDCA than this district. Further, because UMBRA is not located in this district, it is exceedingly unlikely that UMBRA has relevant documents in this district.

Second, the fact that evidence is electronic does not mean that access is uniform in each district. *See WAG Acquisition, L.L.C. v. Google LLC*, 2022 WL 9569437, at *4 (W.D. Tex. Oct. 5, 2022) (citing *In re Apple Inc.*, 2022 WL 1196768, at * 4 (Fed. Cir. Apr. 22, 2022)); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("electronic storage of documents . . . does not make the sources-of-proof factor irrelevant"). Because of a lesser "ease of access in the Western District of Texas *relative* to the ease of access in the Northern District of California," this factor weighs in favor of transfer. *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021).

Third, while UMBRA argues that VMware will have some documents in this district, VMware has stated that none of its relevant documents are located in this district. VMware has presented strong evidence that the relevant evidence is located in the NDCA or abroad, (Reply, Dkt.

31, at 1–4), while UMBRA points only to the fact that VMware has an office in this district, (Resp., Dkt. 27, at 6). Accordingly, this factor weighs strongly in favor of transfer.

### 2. Availability of Compulsory Process to Secure Attendance

This factor focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen II*, 545 F.3d at 316). "When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). A court may subpoena a witness to attend trial only (A) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (B) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

VMware alleges that at least one third party witness—a founder of the company that created one of the accused products, VeloCloud Networks, Inc. ("VeloCloud"), which is now owned by VMware—is located in the NDCA, while no relevant third parties are located in this district, and therefore argues that "this factor slightly favors transfer." (Mot., Dkt. 23, at 5, 10). In response, UMBRA argues that this witness is "more accurately characterized as a willing party witness" as a former employee and that he would not have relevant information. (Resp., Dkt. 27, at 9). UMBRA also argues that there are no other third-party witnesses identified in the NDCA and that VMware may have employees with relevant knowledge in this district because VMware has an office here. (*Id.*). Thus, UMBRA asserts that this factor is neutral at best, and potentially favors UMBRA. (*Id.* at 9–10).

The Court agrees with VMware. Former employees are considered non-party witnesses, so it is relevant to the Court's analysis that a third-party witness resides in the NDCA. *See In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021). If the VeloCloud founder is a willing witness, then a subpoena may not be necessary; however, the possibility that he will be an unwilling witness weighs in favor of transfer. Further, the Court notes that UMBRA's discussion of VMware witnesses is irrelevant to the Court's analysis of this factor, as current company employees are considered party witnesses. *See id.*

Because the NDCA has more subpoena power over potential third-party witnesses than this Court, this factor weighs slightly in favor of transfer. *In re Hulu, LLC*, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) (citing *In re HP Inc.*, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)).

### 3. Cost of Attendance

The cost of attendance focuses on willing witnesses, and the factor considers both party and non-party witnesses. *Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204). This factor is often considered the most important factor to be considered in deciding whether to transfer venue. *Moss v. Lockheed Martin Corp.*, No. 3:10-CV-1659-M, 2011 WL 197624, at *5 (N.D. Tex. Jan. 18, 2011) (citing *AT&T Intell. Prop. I L.P. v. Airbiquity Inc.*, No. 3:08–CV–1637–M, 2009 WL 774350, at *5 (N.D. Tex. Mar. 24, 2009)). The Fifth Circuit employs a "100-mile rule" which states that when "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. The Federal Circuit has stated that courts should not apply the rule rigidly if they will have to travel a significant distance regardless of the venues at stake. *In re Apple*, 979 F.3d at 1342.

7

As briefly noted in the previous section, the vast majority of likely witnesses are located in California, especially the NDCA, while none of the likely witnesses are located in the Western District of Texas. VMware has asserted that all of the witnesses that it expects to call at trial are located in the NDCA, with the exception of one United Kingdom-based witness. (Mot., Dkt. 23, at 9). VMware notes that "most U.S.-based engineers responsible for developing the Accused Technologies are located in or near Palo Alto" and that "the witnesses knowledgeable about the marketing and licensing of the Accused Technologies are located in or near Palo Alto." (*Id.*). Further, VMware notes that only "a few lower-level VMware employees work in Austin." (*Id.*). In response, UMBRA argues that "four out five of [VMware's] potential party witnesses acknowledge the availability of other potential party witnesses, in their same subject matter areas, which are located in Texas." (Resp., Dkt. 27, at 7).

UMBRA has failed to meaningfully refute VMware's contention that the vast majority of witnesses are located in the NDCA. Further, while UMBRA argues that VMware has some employees in this district, VMware also has employees in New York, the United Kingdom, and other countries—and VMware states that it has no engineering employees who work on two of the four accused products in this district. (*Id.* at 5). Additionally, the sheer number of VMware's employees also provides a helpful contrast: VMware has "158 employees on the product teams in the Northern District of California and only five in the Western District of Texas." (*Id.* at 5–6). There is no reason to think that the VMware witnesses in this district that UMBRA identifies will provide any relevant testimony. Because most of the relevant witnesses are located within the NDCA and because few, if any, likely witnesses are located in this district, this "most important factor" weighs strongly in favor of transfer.

4. Other Problems

"When considering the private interest factors, courts must also consider all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. VMware argues that this factor is neutral, noting that this case is in its early stages, while also acknowledging that UMBRA has filed a similar action in this district against Cisco Systems, Inc. (Mot., Dkt. 23, at 11 (citing *UMBRA Techs., Ltd. v. Cisco Sys., Inc.*, No. 1:23-CV-903-DII (W.D. Tex., filed Aug. 2, 2023) (the "*Cisco* case"). In response, UMBRA argues "that both cases involve the same four asserted patents and most of the same asserted claims from each patent" and notes that there are pending motions to dismiss in each case. (Resp., Dkt. 27, at 10). In its reply, VMware notes that the *Cisco* case "involves a different defendant and technology and thus is likely to involve significant unrelated discovery and evidence." (Reply, Dkt. 31, at 8). The Court finds that this factor is neutral. This case is in its early stages, as is the *Cisco* case. Moreover, the *Cisco* case "involves different defendants and different accused products" that "are therefore likely to result in "significantly different discovery, evidence, proceedings, and trial." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (quotations and citations omitted). Accordingly, "any incremental gains in keeping this case in the Western District of Texas are insufficient to justify overriding the inconvenience to the parties and witnesses." *Id.* Accordingly, this factor is neutral, as there are no material problems weighing for or against transfer.

**C. Public Interest Factors**

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. The Court will address each in turn.

### 1. Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The relevant inquiry under this factor is the "speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343 (citations omitted). This factor is "the most speculative" and is given little weight compared to the other transfer factors. *XR Commc'ns*, 2022 WL 3702271, at *9 (citing *In re Genentech*, 566 F.3d at 1347). The Federal Circuit recently "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple*, 2021 WL 5291804, at *4 (quoting *In re Juniper Networks*, 14 F.4th at 1322). VMware notes that the NDCA has roughly a third the number of patent cases as this district and that this district tends to schedule trials faster as a default than the NDCA, arguing that this factor is neutral at best. (*Id.* at 11–12). On the other hand, UMBRA asserts that the court congestion factor strongly weighs against transfer, noting that there is a 60-day difference between time to trial in patent cases between this district and the NDCA. (Resp., Dkt. 27, at 11 (according to Lex Machina, "the average length of time between filing and trial for patent cases in the Western District of Texas is 773 days while in the Northern District of California, the average is approximately 833 days")). As VMware points out, on the flip side, this district takes longer to resolve motions to dismiss and for summary judgment. (Reply, Dkt. 31, at 9 ("The Western District of Texas also has a longer time to reach motions to dismiss (237 days vs. 176 days) and summary judgment (686 days vs. 639 days) than the Northern District of California.")). In addition, the undersigned has an exceptionally busy civil caseload as the only active district judge in the Austin division of the Western District of Texas, with over 900 pending civil cases. Overall, the heavy Austin caseload and slower district-wide disposition times outweigh the marginally faster time to trial. This factor therefore weighs in favor of transfer.

2. Local Interest

Under this factor, courts evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 315. The factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *In re Google*, 2021 WL 4427899, at *5 (internal citations omitted). While VMware has an office in Austin, the Court finds that the NDCA has a greater local interest in this case because VMware is headquartered there and the technologies at issue were mainly designed and developed in the NDCA or abroad (in India and the United Kingdom). The VMware employees and documents related to their creation and use are located there. Accordingly, the NDCA has a cognizable interest in having the allegations brought against local companies decided in that district. Moreover, UMBRA has no interest in litigating in this district, as it has not contended that it has any connection to this district; as VMware points out, the three UMBRA entities are located in: (1) the British Virgin Islands (UMBRA Technologies Ltd. (UK)); (2) Hong Kong (UMBRA Technologies Limited (CN)); and (3) Delaware and Rhode Island (UMBRA Technologies (US) Inc.). (Mot., Dkt. 23, at 1). Overall, this factor weighs strongly in favor of transfer.

3. Familiarity with the Law and 4. Conflict of Laws

Both parties agree that these factors are neutral. (Mot., Dkt. 23, at 13; Resp., Dkt. 27, at 13). UMBRA alleges violations only of federal patent law, and there are no issues involving conflict of foreign laws. Accordingly, these two factors weigh in neither direction.

### D. Conclusion

For the reasons discussed above, the factors weigh overwhelmingly in favor of transfer. Four factors—the ease of access to proof, cost of attendance, court congestion, and local interests—all weigh strongly in favor of transfer. The availability of compulsory processes weighs slightly in favor of transfer. Three factors—familiarity of law, conflict of law, and miscellaneous problems—are

neutral. No factor weighs in favor of keeping venue in the Western District of Texas. Therefore, because venue is clearly more convenient in the Northern District of California, the Court will grant VMware's motion to transfer.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that VMware's Motion to Transfer Venue, (Dkt. 23), is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **TRANSFERRED** to the Northern District of California.

**SIGNED** on March 13, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE